1  Robert K. Sall, Esq. (SBN 83782)
   rsall@sallspencer.com
2  Suzanne Burke Spencer, Esq. (SBN 188597)
   sspencer@sallspencer.com
3  SALL SPENCER CALLAS & KRUEGER
   A Law Corporation
4  32351 Coast Highway
   Laguna Beach, CA 92651
5  Telephone No.: (949) 499-2942
   Facsimile No.: (949) 499-7403
6
7  Attorneys for Plaintiffs
   BOARD OF TRUSTEES of the LEGAL DEFENSE FUND of PORAC
8

9

10                  **UNITED STATES DISTRICT COURT**

11                  **EASTERN DISTRICT OF CALIFORNIA**

12                     **SACRAMENTO DIVISION**

13  BOARD OF TRUSTEES of the LEGAL          CASE NO.
    DEFENSE FUND of the PEACE OFFICERS
14  RESEARCH ASSOCIATION OF
    CALIFORNIA (PORAC), an ERISA trust,
15                                          **COMPLAINT FOR:**
          Plaintiff,
16                                          **(1) ENGAGING IN PROHIBITED**
          v.                                    **TRANSACTION FORBIDDEN BY**
17                                              **ERISA § 406(A), 29 U.S.C. § 1106(A)**
    LACKIE, DAMMEIER, MCGILL & ETHIR,       **(2) VIOLATION OF RACKETEERING**
18  an unspecified entity;                      **INFLUENCED AND CORRUPTION**
    DIETER C. DAMMEIER, an individual;          **ORGANIZATION ACT ("RICO")**
19  MICHAEL A. McGILL, an individual;           **[18 U.S.C. § 1961 *et seq.*]**
    SAKUNTHALA E. ETHIRVEERASINGAM,          **(3) CONSPIRACY TO VIOLATE RICO;**
20  also known as SAKU E. ETHIR, an         **(4) LEGAL MALPRACTICE;**
    individual;                             **(5) BREACH OF FIDUCIARY DUTY;**
21  PETER J. HORTON, an individual;         **(6) FRAUD;**
    KASEY L. SIRODY, an individual;         **(7) UNJUST ENRICHMENT;**
22  CHRISTOPHER L. GASPARD, an              **(8) NEGLIGENT SUPERVISION; AND**
    individual;                             **(9) VIOLATION OF BUS. & PROF. CODE**
23  KASEY A. CASTILLO, an individual;           **§ 17200 (UNFAIR COMPETITION)**
    JOHN H. BAKHIT, an individual;
24  and DOES 1 through 25, inclusive,       DEMAND FOR JURY TRIAL

25        Defendants.

26

27

28

Plaintiff the Board of Trustees of the Legal Defense Fund (**"LDF"**) of the Peace Officers

Research Association of California (**"PORAC"**) alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the claims asserted

in this action arise under Title I of the Employee Retirement Income Security Act of 1974

("ERISA") [29 U.S.C. §§ 1001, *et seq.*] and the Racketeering Influenced and Corruption

Organization Act ("RICO") [18 U.S.C. §§ 1961, *et seq.*].

2.      This Court has subject matter jurisdiction over this action pursuant to ERISA

§ 502(e)(1) (29 U.S.C. § 1132(e)(1)) and 18 U.S.C. § 1964(a).

3.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the

state law claims asserted herein in that those claims form part of the same case or controversy under

Article III of the United States Constitution as the claims arising under federal law.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C.

§ 1965(a) because Plaintiff is informed and believes that the entity defendant resides in this district

because it is subject to personal jurisdiction in this district and further pursuant to 28 U.S.C.

§ 1391(b) because a substantial part of the events giving rise to the claims asserted occurred in this

district.  Venue is further proper in this district pursuant to ERISA § 502(e)(2) (29 U.S.C.

§ 1132(e)(2)) because the employee benefit plan at issue was administered in this district during the

relevant time.

## INTRA-DISTRICT ASSIGNMENT

5.      Assignment to the Sacramento Division of this Court is proper under L.R. 120(d)

because the claims giving rise to venue in this Court arose in San Joaquin County.

## PARTIES

6.      Plaintiff BOARD OF TRUSTEES (**"Trustees"** or **"Plaintiff"**) of the of the LEGAL

DEFENSE FUND of the PEACE OFFICERS RESEARCH ASSOCIATION OF CALIFORNIA

(PORAC) (the **"Plan"** or **"LDF"**) is a welfare benefit plan providing prepaid group legal services

to peace officers and other public safety employees, within and without the State of California.

LDF is governed by the Employee Retirement Income Security Act of 1974 (**"ERISA"**) and has its

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**                                                    Page 2

Complaint - federal FINAL

principal place of business in Stockton, California.  The Trustees are the "named fiduciaries," "fiduciaries," the "plan administrator" and the "plan sponsor," as those terms are use in ERISA.

7.      Defendant LACKIE, DAMMEIER, MCGILL & ETHIR (*"LDME"*) is a de facto unspecified entity purporting to be a professional corporation which, in violation of Corporations Code § 13404 and Business & Professions Code § 6160, *et seq.*, is not now and never was registered to practice law with the State Bar of California.  LDME had its principal place of business at 367 North Second Ave., Upland, California 91786, San Bernardino County, but Plaintiff is informed and believes and thereon alleges that LDME is no longer in business or operating as a going concern.  At all times relevant to the matters alleged herein, Plaintiff is informed and believes and thereon alleges that LDME did business and represented clients in Counties throughout California, including Sacramento, Humboldt, Los Angeles, Riverside, San Bernardino, Orange, Ventura, and San Diego.

8.      Plaintiff is informed and believes and thereon alleges that Defendant DIETER C. DAMMEIER (*"Dammeier"*) is an individual residing in the County of San Bernardino, State of California.  Defendant Dammeier is a lawyer duly licensed to practice law in the State of California, holding State Bar No. 188759.  Plaintiff is informed and believes and thereon alleges that Defendant Dammeier is, and at all relevant times has been, a partner/shareholder in LDME and participated in the theft of pension funds from LDF, and in the management and operation of the RICO enterprise alleged herein.  At all times relevant to the matters alleged herein, Plaintiff is informed and believes and thereon alleges that Dammeier did business and represented clients in Counties throughout California, including Sacramento, Humboldt, Los Angeles, Riverside, San Bernardino, Orange, Ventura, and San Diego.

9.      Plaintiff is informed and believes and thereon alleges that Defendant MICHAEL A. MCGILL (*"McGill"*) is an individual residing in the County of Orange, State of California.  Defendant McGill is a lawyer duly licensed to practice law in the State of California, holding State Bar No. 231613.  Plaintiff is informed and believes and thereon alleges that Defendant McGill was, and at all relevant times has been, a partner/shareholder in LDME and participated in the theft of pension funds from LDF, and in the management and operation of the RICO enterprise alleged

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 3

herein.  At all times relevant to the matters alleged herein, Plaintiff is informed and believes and thereon alleges that McGill did business and represented clients in Counties throughout California, including Sacramento, Humboldt, Los Angeles, Riverside, San Bernardino, Orange, Ventura, and San Diego.

10.     Plaintiff is informed and believes and thereon alleges that Defendant SAKUNTHALA E. ETHIRVEERASINGAM is also known as SAKU E. ETHIR (*"Ethir"*) and is an individual residing in the County of Riverside, State of California.  Defendant Ethir is a lawyer duly licensed to practice law in the State of California, holding State Bar No. 201498.  Plaintiff is informed and believes and thereon alleges that Defendant Ethir is, and at all relevant times has been, a partner/shareholder in LDME and participated in the theft of pension funds from LDF, and in the management and operation of the RICO enterprise alleged herein.  At all times relevant to the matters alleged herein, Plaintiff is informed and believes and thereon alleges that Ethir did business and represented clients in Counties throughout California, including Sacramento, Humboldt, Los Angeles, Riverside, San Bernardino, Orange, Ventura, and San Diego.

11.     Plaintiff is informed and believes and thereon alleges that Defendant PETER J. HORTON (*"Horton"*) is an individual residing in the County of Ventura, State of California.  Defendant Horton is a lawyer duly licensed to practice law in the State of California, holding State Bar No. 227678.  Plaintiff is informed and believes and thereon alleges that Defendant Horton is, and at all relevant times has been, a partner/shareholder in LDME and participated in the theft of pension funds from LDF, and in the management and operation of the RICO enterprise alleged herein.  At all times relevant to the matters alleged herein, Plaintiff is informed and believes and thereon alleges that Horton did business and represented clients in Counties throughout California, including Sacramento, Humboldt, Los Angeles, Riverside, San Bernardino, Orange, Ventura, and San Diego.

12.     Plaintiff is informed and believes and thereon alleges that Defendant KASEY L. SIRODY (*"Sirody"*) is an individual residing in the County of Ventura, State of California.  Defendant Sirody is a lawyer duly licensed to practice law in the State of California, holding State Bar No. 206405.  Plaintiff is informed and believes and thereon alleges that Defendant Sirody was,

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 4

1  and at all relevant times has been, an associate attorney with LDME and participated in the theft of

2  pension funds from LDF, and in the operation of the RICO enterprise alleged herein.  At all times

3  relevant to the matters alleged herein, Plaintiff is informed and believes and thereon alleges that

4  Sirody did business and represented clients in Counties throughout California, including

5  Sacramento, Humboldt, Los Angeles, Riverside, San Bernardino,  Orange, Ventura,  and San

6  Diego..

7          13.     Plaintiff is informed and believes and thereon alleges that Defendant

8  CHRISTOPHER L. GASPARD (*"Gaspard"*) is an individual residing in the County of San

9  Bernardino, State of California.  Defendant Gaspard is a lawyer duly licensed to practice law in the

10  State of California, holding State Bar No. 275763.  Plaintiff is informed and believes and thereon

11  alleges that Defendant Gaspard is, and at all relevant times has been, a partner/shareholder in

12  LDME and participated in the theft of pension funds from LDF, and in the management and

13  operation of the RICO enterprise alleged herein.  At all times relevant to the matters alleged herein,

14  Plaintiff is informed and believes and thereon alleges that Gaspard did business and represented

15  clients in Counties throughout California, including Sacramento, Humboldt, Los Angeles,

16  Riverside, San Bernardino, Orange, Ventura, and San Diego.

17          14.     Plaintiff is informed and believes and thereon alleges that Defendant KASEY A.

18  CASTILLO (*"Castillo"*) is an individual residing in the County of Riverside, State of California.

19  Defendant Castillo is a lawyer duly licensed to practice law in the State of California, holding State

20  Bar No. 236690.  Plaintiff is informed and believes and thereon alleges that Defendant Castillo is,

21  and at all relevant times has been, a partner/shareholder in LDME and participated in the theft of

22  pension funds from LDF, and in the management and operation of the RICO enterprise alleged

23  herein.  At all times relevant to the matters alleged herein, Plaintiff is informed and believes and

24  thereon alleges that Castillo did business and represented clients in Counties throughout California,

25  including Sacramento, Humboldt, Los Angeles, Riverside, San Bernardino, Orange, Ventura, and

26  San Diego.

27          15.     Plaintiff is informed and believes and thereon alleges that Defendant JOHN H.

28  BAKHIT (*"Bakhit"*) is an individual residing in the County of San Bernardino, State of California.

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**

Page 5

Complaint - federal FINAL

1   Defendant Bakhit is a lawyer duly licensed to practice law in the State of California, holding State

2   Bar No. 246643.  Plaintiff is informed and believes and thereon alleges that Defendant Bakhit is,

3   and at all relevant times has been, a partner/shareholder in LDME and participated in the theft of

4   pension funds from LDF, and in the management and operation of the RICO enterprise alleged

5   herein.  At all times relevant to the matters alleged herein, Plaintiff is informed and believes and

6   thereon alleges that Bakhit did business and represented clients in Counties throughout California,

7   including Sacramento, Humboldt, Los Angeles, Riverside, San Bernardino, Orange, Ventura, and

8   San Diego.

9           16.    The true names and capacities of Defendants DOES 1 through 25, inclusive, and

10   each of them, are presently unknown to Plaintiff and Plaintiff therefore sues said defendants by

11   such fictitious names.  Plaintiff will seek leave of Court to amend this pleading to allege the true

12   names and capacities of said defendants when ascertained.  Plaintiff is informed and believes and

13   thereon alleges that each of said DOE defendants performed, participated in, abetted in some

14   manner, or is otherwise responsible in some manner for the conduct alleged herein and is liable to

15   Plaintiff for the relief sought in this Complaint.)

16           17.    Defendants Dammeier, McGill, Ethir, Horton, Gaspard, Sirody, Castillo and Bakhit,

17   are sometimes referred to collectively herein as the "Individual Defendants."  LDME and the

18   Individual Defendants and DOES 1-25 are collectively referred to herein as "Defendants."

19           18.    Plaintiff is informed and believes and thereon alleges that at all times mentioned

20   herein, Defendants, and each of them, were members of a RICO enterprise as that is defined

21   pursuant to Title 18 United States Code § 1961(4) of RICO and were the agents, partners, servants,

22   co-conspirators, and/or employees of each of the other Defendants, and were acting within the

23   course and scope of such enterprise, agency, partnership, service, conspiracy, and/or employment

24   while doing the acts hereinafter alleged.  Further, Plaintiff is informed and believes and thereon

25   alleges that each of the Defendants named herein has ratified, condoned and knowingly accepted

26   the benefits of the wrongful conduct of the other Defendants.  Among other things, Plaintiff is

27   informed and believes that, between at least 2006 through July 2013, the LDME partners and other

28   LDME attorneys met monthly to review the attorney's billings before sending the bills for payment

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**                                          Page 6

Complaint - federal FINAL

1   to LDF and its other clients.  Plaintiff is further informed and believes that each of the Individual

2   Defendants had access to the time slips or similar timekeeping software used to generate LDME's

3   invoices and the ability to ascertain, and used reports at their monthly meetings to track, the total

4   hours they and other LDME attorneys were billing to LDF matters.

5   19.   Plaintiff is informed and believes and thereon alleges that at all relevant times,

6   LDME failed to register as a law corporation with the State Bar of California.  As a result of

7   LDME's failure to register, LDME has at all times been engaged in the unauthorized practice of

8   law and may be required to disgorge all legal fees paid to it.  As a further result of such failure,

9   none of LDME's shareholders/partners is entitled to the protections governing corporations and is

10  liable personally, jointly and severally, for all liability and damages caused by LDME as alleged

11  herein.

## FACTUAL BACKGROUND

### The LDF Group Prepaid Legal Services Plan

14  20.   LDF is an employee welfare benefit plan providing prepaid group legal services for

15  peace officers and public safety employees for matters related to their employment.  LDF has

16  existed since 1974 and currently has more than approximately 100,000 members.

17  21.   LDF is governed by a Trust Agreement and Plan Document which provides that the

18  Trustees have the power and duty to control and manage the plan.  The Trustees are empowered to

19  retain, and have retained, the services of a Legal Administrator to supervise the provision of legal

20  services under the Plan.  That Legal Administrator is Legal Defense Administrators, Inc. (**"LDA"**),

21  which is run by Edward Marc Fishman, a licensed attorney in the State of California.

22  22.   Under the terms of the operative Trust Agreement, the Trustees are authorized to

23  provide legal service benefits to "Participants" by direct contract with one or more law firms or by

24  direct employment of licensed lawyers.  Plan Participants are the public safety officers eligible for

25  benefits under the plan.  Legal service benefits are provided, here, by direct contract between the

26  Trustees and one or more law firms, defined as a "Panel Attorney" under the LDF Plan document.

27  The Panel Attorneys submit bills directly to LDF who pays such bills through LDA.  There is a

28  relationship akin to a tripartite attorney-client relationship among LDF, the Plan Participants and

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**

Page 7

Complaint - federal FINAL

1   the Panel Attorneys.

2         23.    In California, to be eligible for benefits under LDF, a participant must be a dues-

3   paying member of a police association, defined as a "Member Association" in the Plan document,

4   that itself is a dues-paying member of PORAC.  PORAC is the sponsoring organization of LDF in

5   California.  A Member Association's termination of membership in PORAC or LDF terminates the

6   right to any benefits under the Plan.

7         24.    LDF offers different levels of benefit plans.  Member Associations select the

8   particular benefit plan that it will make available to its members.  Provided that more than 50% of

9   the total membership of the Member Association signs up for, and contributes to, LDF, the

10  Association and its members may participate in LDF under the terms of the Plan Document.

11        25.    The benefits provided under all levels of LDF's plans includes the provision of a

12  Panel Attorney or Field Representative to a Participant in need of legal services arising out of civil,

13  criminal or administrative actions (depending on the plan) and all "customary, necessary, and

14  reasonable services related to" such actions.  Appeals are generally not covered under the plan,

15  unless there exists a "reasonable likelihood of success on the appeal."  Benefits may be terminated

16  if the Administrator determines that it is in the "best interest of a participant" to cease participation

17  in any particular case, included where continued proceedings may subject the Participant to more

18  severe sanctions or attorney's fees.  Benefits may also be terminated if the Participant rejects a

19  reasonable settlement offer.

20        26.    Benefits are provided in accordance with a fee schedule for Panel Attorneys set by

21  the Administrator.  The LDF Administrator is responsible for referring the defense of an eligible

22  participant to a Panel Attorney, but the Member Associations may designate the Panel Attorney

23  firms to which its participants' cases may be referred.  In other words, from the list of Panel

24  Attorneys approved by LDF to provide legal services under the plan, Member Associations select

25  one or more such firms or attorneys to provide services under the plan to that Association's

26  members.

27

28

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**The Relationship Between LDF and LDME**

27.     Since it was formed in or about 2006, LDME was one of the firms on LDF's panel of attorneys to whom LDF's plan participants' cases could be assigned.  Michael Lackie, the first named individual in the LDME firm, was a former police officer and solo practitioner who joined LDF's panel in 1993.  In 1993, Mr. Lackie executed a "Contract for Professional Legal Services" (the ***"1993 Agreement"***) with LDF which provided that he would deliver legal services as a Panel Attorney pursuant to LDF's Plan.  This 1993 Agreement expressly  provided that the Panel Attorney "understood and agreed" that his "covenants, duties and obligations under this Contract are subject to the provisions of the California Rules of Professional Conduct and the highest standards of the legal profession . . ."  The 1993 Agreement also provided that the "Panel Attorney hereby agrees to submit bills for legal services rendered and costs incurred pursuant to this Contract in conformance with the format and policies established by the LEGAL ADMINISTRATOR and Trustees."  Mr. Lackie executed another "Contract for Professional Legal Services" with LDF in 1997 (the ***"1997 Agreement"***).  The provisions of the 1997 Agreement were in all substantial aspects identical to the 1993 Agreement.

28.     Mr. Lackie's firm expanded over the years as Mr. Lackie added partners, including named partners Dieter Dammeier, Michael McGill, and Saku Ethir.  Plaintiff is informed and believes and thereon alleges that LDME was formed as a corporation on or about March 24, 2006.  At all times since its formation, LDME was purporting to be a professional corporation and practiced law, albeit not properly registered with the State Bar.  Plaintiff is informed and believes and thereon alleges that each of the Individual Defendants practiced law through LDME.   Plaintiff reasonably relied upon the representations of Defendants as to LDME's status as a law corporation, and LDF accepted LDME as a law corporation and member of the panel.

29.     Commencing on January 1, 2012, and continuing to the present, the supervision of legal services provided under the plan was performed by LDA.  These services include performing case intakes, assigning cases to panel counsel, keeping apprised of case developments and supervising the provision of legal services, and receiving and making payment for invoices received for legal services provided to plan participants.  LDF's panel attorney billings were reviewed and

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**                                        Page 9

Complaint - federal FINAL

1  paid by LDA, as administrator for LDF using LDF funds.  Where errors appeared on the face of the

2  invoices, LDA corrected or made adjustments to the invoices before paying them.

3       30.     In order to fulfill its responsibilities under the Plan Document to control and manage

4  the legal services plan and to supervise the provision of services under the plan, the Trustees and

5  LDA are entitled to receive confidential information concerning a participant's case.  In connection

6  with cases being handled by LDME attorneys, such confidential information would be provided by

7  LDME to LDA, together with frequent consultation between LDA and the LDME attorney

8  handling the case.  Such consultations and information permitted the Trustees (through LDA) to

9  determine what legal services were customary, necessary and reasonable for the case, whether an

10  appeal was likely to succeed, whether a settlement offer made was reasonable and/or whether it was

11  in the best interest of a participant to cease participation in a case.  These determinations – which

12  are required under the Plan to be made by LDA for the Trustees – were made based in part on the

13  advice, counsel and opinion of the LDME attorney assigned to handle the case.  LDF, the defended

14  Participant and LDME at all times shared a common interest in the subject matter of LDME's

15  representation: the legal defense of the Participant under the terms of the Plan.

16       31.     At all times relevant to the claims asserted herein, Plaintiff reposed trust and

17  confidence in Defendants as their attorneys to provide such counsel and advice.  Defendants

18  recognized and understood that Plaintiff placed great trust and confidence in them, and that Plaintiff

19  depended upon them to be truthful, provide competent advice, and maintain confidences, trust,

20  loyalty and independent judgment on behalf of Plaintiff, unimpaired by Defendants' own personal

21  interests or the interests of others not shared in common with LDF.

22       32.     LDME and the Individual Defendants further owed Plaintiff a duty of care,

23  including the obligations of diligence, competence, loyalty, confidentiality, full and fair disclosure,

24  utmost candor and the duty to use and possess such knowledge, ordinary care and skill as is

25  commonly used and possessed by other attorneys in the community under like circumstances.

26  Included among such duties were obligations imposed upon said Defendants as fiduciaries to avoid

27  putting themselves in a position where their own interests conflicted with those of their clients,

28  including not charging excessive and unwarranted fees, to avoid conflicts of interest, and to make

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 10

full and complete disclosure of all pertinent facts known to said Defendants, including the obligation to bill accurately, and to correct any errors or inaccuracies in the bills which resulted in excessive or unwarranted fees.

### LDF's Discovery of Billing Anomalies

33.    In or about late June 2013, based upon new billing software that gave LDA the capacity to run more sophisticated comparative reports and analyses, LDA discovered certain anomalies in LDME's bills, especially with regard to the amount of billable hours charged by LDME attorneys.

34.    For example, in 2012, Defendants Horton and Bakhit had billed LDF over 3,000 hours each and Defendant Ethir had billed 4,275 hours to LDF.  These numbers of billable hours far exceeded the average hours billed by other LDF panel attorneys.  These numbers do not include any hours these attorneys would have billed to other, non-LDF clients.

35.    Prior to obtaining the ability to run these reports, LDF was unaware of these excessive billing practices by LDME.  LDME consistently handled a high volume of cases for LDF, and LDA processes high volumes of attorney invoices from all LDF panel attorneys (on average 1,400 invoices per month in 2013).  In the eighteen months preceding June 2013, LDME attorneys had handled over 1800 matters for LDF participants and routinely staggered the dates upon which bills were submitted.  Prior to the electronic billing that began with invoices issued in January 2012, LDME, like all other LDF panel attorneys, submitted paper invoices – one invoice for each matter.  In all of the invoices submitted by LDME (paper and electronic), each attorney's time is distributed across multiple client matters.  In other words, attorneys do not invoice their time by attorney, but by client matter.  Given the volume of matters and matter-based manner of attorney billing, it was not reasonably possible for LDF to discover the billing anomalies without sophisticated billing software running the proper reports on a sufficient amount of billing data.  The new billing system was not populated with enough data to run a meaningful comparative analysis until in or about June 2013.  LDF could not have reasonably discovered the facts underlying the claims asserted herein prior to June 2013.  Once it did, it acted promptly to investigate and remedy the problem, ultimately, and after giving LDME ample opportunity to adequately explain the

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 11

1   anomalies, by removing LDME as panel counsel.

2   **LDF Investigates and Uncovers LDME's Fraudulent Billing Practices**

3       36.     On or about July 9, 2013, LDF (through its administrator LDA) contacted LDME

4   and informed it that certain anomalies had been discovered and requested LDME's cooperation in

5   LDA's efforts to investigate those anomalies.  Over the next several days, LDA had numerous

6   discussions and exchanged emails with LDME attorneys, asking them to explain certain billing

7   anomalies and, in particular, to explain how those attorneys had billed in many instances in excess

8   of 20 hours per day on multiple days.

9       37.     During these exchanges, LDME attorneys acknowledged numerous errors in their

10  bills to LDF (*e.g.*, duplicate billings, or excessive billing for a task or travel), but never refunded to

11  LDF the amounts over-paid.  Instead, during this same time period, LDME insisted that its

12  outstanding invoices be paid.  Unless paid immediately, LDME threatened to inform LDF

13  participants that LDF was not paying its bills and the legal representation of the participants was in

14  jeopardy.  On July 17, 2013, managing partner Ethir asked LDA to meet with LDME attorneys to

15  discuss the billing dispute.

16      38.     Given the volume of billing entries (more than 40,000) at issue and the complexities

17  of detecting padded invoices, LDA consulted with an outside CPA to assist LDA in its preliminary

18  analysis of the billing anomalies.  In response to LDME's request for an in-person meeting, a

19  meeting was arranged by trustee Peter Hoh and Defendant Dammeier.  This meeting took place on

20  or about August 8, 2013 in Sacramento at a regular Trustees' meeting.  LDME attorneys

21  Dammeier, Ethir and Michael Schwartz attended.  LDA, trustee counsel and all five of the LDF

22  Trustees were present.

23      39.     At the meeting, LDA showed the LDME attorneys some of the preliminary results of

24  LDA's analysis of LDME's bills.  The purpose of the meeting from the Trustees perspective was to

25  hear LDME's explanation for the excessive fees charged, such as Ethir's 4,275 hours in a single

26  year.  Among the preliminary items discussed at this meeting was the finding that in LDF's

27  approximately 20-year history, the highest number of hours billed by a single panel attorney in a

28  single year was approximately 2,700 (and that in a year when a particularly high profile trial

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

occurred).  Only 5 attorneys (excluding LDME attorneys) in the history of LDF had ever billed

over 2000 hours in a single year, and none of those attorneys did so in more than one year.  Several

LDME attorneys, however, billed in excess of 3,000 hours per year in multiple years.

40.     In response to the Trustees' inquiries, the LDME attorneys confirmed that the

excessive hours billed by the LDME attorneys looked "about right" and angrily exclaimed that they

achieved such high billable hours by double and triple billing for time spent.  In other words, for

example, while traveling and billing the travel time for LDF client matters, they would also

simultaneously bill for the time to make a telephone call and also bill simultaneously for sending an

email or text.  When asked if they billed more than 24 hours in a day, Ethir responded "you bet I

do.  I can bill 24, 25 or 26 hours in a day."  The Trustees requested that LDME submit all of its

billings, including non-LDF billings (redacted as necessary to protect privilege and confidentiality)

for review by an outside, independent CPA.  LDME ultimately refused this request.  After some

additional dialogue, during which LDME attorneys became more and more agitated, Dammeier

abruptly ended the meeting proclaiming that the Trustees had 30 days to "stop this" and pay

LDME's pending bills.  Otherwise, LDME would stop work and tell their LDF clients that LDME

was not paying its bills.

41.     After the LDME attorneys left, the Trustees deliberated.  Ultimately, the Trustees

authorized its counsel to retain an independent, certified fraud examiner to review LDME's billings

to LDF.  Fearful that LDME would abandon its LDF clients, the Trustees also authorized a

substantial payment to LDME on the outstanding balance that LDME claimed it was owed.

42.     Late in the evening of August 9, 2013, at approximately 1:00 a.m., Defendant

Horton called Fred Rowbotham, the Chairman of the LDF Board of Trustees, railing on him for

raising billing issues with LDME, saying "do you like being chairman? don't fuck with us" and

threatened to use the Member Associations to have the LDF board removed, specifically claiming

that LDME had Brian Smith (President of the Riverside Police Officers Association (***"RPOA"***)

preparing a petition to remove Rowbotham and/or the other non-compliant LDF trustees.  Horton

further claimed that Rowbotham's "world will turn upside down" in eight days.  Horton said words

to the effect that LDME would then be so big and powerful, LDF will not be able to control it.

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**                               Page 13

Complaint - federal FINAL

43.     A few days after the August 8, 2013 meeting, LDME withdrew its 30-day ultimatum and provided additional information to the Trustees, including numerous tables and written explanations for "innocent mistakes" made in the billings.  No refunds were ever received by LDF for these "innocent mistakes" in LDME's billings.  Ethir also provided written explanations from all LDME attorneys for days in which more than 19 hours was billed by that attorney.  LDME requested that these explanations and additional information be submitted to the third party fraud examiner the Trustees had retained so that he could have complete information when preparing his report.  LDF did so.

44.     LDF's investigation continued through the month of August.  LDF provided all information it received from LDME to the fraud examiner before he generated a report of his findings.  A special meeting of the Trustees was set for September 8, 2013 to discuss the LDME billing issues.  LDME attorneys were invited to attend the meeting.  On September 5, 2013, LDME delivered to LDF an "Audit Report" conducted by a legal audit service LDME had retained.  The Audit Report and the supporting exhibits and documentation were all submitted to the Trustees and to LDF's third party fraud examiner before he delivered his report to LDF.

45.     On August 8, 2013, the certified fraud examiner retained by LDF presented his conclusions to the Trustees.  His analysis included an examination of all panel attorney billing entries, including all of LDME's bills from October 2011 through July 2013.  The examiner concluded that LDME's billing information for that time period indicated fraud, and there was no indicia of any wrongdoing by any other panel attorneys, or any similar pattern to the billing anomalies revealed in the examination of LDME billings.

46.     Among other things uncovered by the examiner, Defendant Ethir billed on all but two days in calendar year 2012 and billed for numerous consecutive 20 plus hour days.  There were also numerous instances of LDME attorneys billing over 24 hours in a single day and many instances of double and triple billing as well, where attorneys were billing on two or three different matters for work performed at the same time.  The examiner's report also revealed evidence of attorneys, such as Defendants Sirody and Horton, billing travel time for travel not taken, including billing for travel three times to the same location for three interviews conducted on the same day by

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**                                    Page 14

the same attorney, when the attorney only travelled once to the interview location.

47.     Moreover, Defendant Ethir billed in 2012 on days she was suspended by the State Bar from the practice of law, thus engaging in the unauthorized practice of law in violation of Bus. & Prof. Code § 6125.  LDME also violated Bus. & Prof. Code § 6133 by allowing Defendant Ethir to practice law while suspended.  Neither LDME nor any of the Individual Defendants ever informed LDF of Ethir's suspension.  A total of 17.5 hours was billed to LDF while Ethir was suspended.  Neither LDME nor Ethir has ever refunded to LDF the amounts paid for Ethir's legal services while suspended by the State Bar.

48.     Since removing LDME and the Individual Defendants as panel counsel, Plaintiff has continued its investigation, including review of the legacy billing data that LDA received from Plaintiff's prior administrator when it took over the administrative operations of Plaintiff.  That data includes paper invoices that were submitted by LDME and its predecessor entities through the years, and a limited amount of computerized data based on those paper invoices.  When LDA became the Administrator under the Plan, it converted the legacy data into an electronically searchable form.  The prior Administrator had not maintained the invoices in a readily accessible or searchable format.  The analysis of those invoices to date reveal similar billing abuses by LDME that could not have reasonably been ascertained prior to Plaintiff becoming aware of LDME's excessive billing practices in June 2013.  Among other things, those legacy records reflect numerous days in which LDME attorneys, including Defendant Dammeier, billed Plaintiff well in excess of 24 hours in a day across numerous invoices for numerous matters.  Plaintiff is informed and believes and thereon alleges that in one such instance, for time allegedly spent on September 4, 2007, Mr. Dammeier billed over 80 hours in a single day.  Plaintiff could not reasonably have discovered these billing practices earlier because they were buried in dozens – sometimes hundreds – of individual time entries over hundreds of invoices and hundreds of individual matters.

49.     LDF is informed and believes and thereon alleges that LDME and its attorneys billed for services and activities never performed, or over-billed for such services and activities.  LDF is further informed and believes and thereon alleges that the Individual Defendants further

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**                                           Page 15

padded LDME's bills by adding time onto the bills in excess of the time that LDME's attorneys actually reported and recorded in LDME's time and billing program.  The fees charged by Defendants are thus unconscionable, excessive, unreasonable, and fraudulent.

50.     LDF is further informed and believes and thereon alleges that LDME and the Individual Defendants intentionally managed LDME, including the supervision of their partners, attorneys and/or employees, encouraging, requiring, and rewarding them for submitting bills seeking unconscionable, excessive, unreasonable and/or fraudulent fees and engaging in abusive and fraudulent billing practices.

51.     After hearing the examiner's presentation, the Trustees met in person with Dammeier, Ethir and Horton on September 8, 2013 to discuss the billing issues.  The Trustees asked the LDME attorneys to present any information or argument they wanted to support the propriety of the bills, as they claimed.  The LDME attorneys presented the documentation and argument they deemed appropriate and then confirmed that they had no additional information to provide and had completed their presentation.  They then left the meeting.  Thereafter, the Trustees deliberated for approximately two hours after which LDF's trustees voted to remove LDME as an LDF panel attorney, but to allow LDF to finish whatever LDF cases it had in progress.  Shortly thereafter, Dammeier sent a widespread email to LDF's members, falsely claiming that LDME was removed because of its aggressive representation of LDF participants, that LDF did not want Panel Attorneys to put much effort into defending LDF Participants, and announced a competing "Premier Coverage Plan" to be offered by LDME to all of its LDF clients desiring to keep LDME as their counsel.  Having publicly taken such positions openly antagonistic to LDF, it was obvious to LDF that LDME would not cooperate with LDF, as required if LDME was to finish up the remaining cases it had in progress.  Accordingly, the Trustees later authorized the transfer of the pending cases from LDME to approved Panel Attorneys.

### Defendants' Use of Illicit Means to Gain "Loyalty" Among Police Organizations

52.     As set forth above, Member Associations in LDF designate the Panel attorney or attorneys who will provide LDF services to that association's members.  To obtain such designations by, and the loyalty of, Member Associations, LDME routinely used improper means,

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**                                                                 Page 16

Complaint - federal FINAL

1    including, personally attacking and/or unduly pressuring decision makers or providing money and

2    gifts and other things of value to the union leaders.

3        53.    For example, during 2012, LDME further claimed to have funnelled money to the

4    President of the Riverside Sheriff Association (RSA), and thereby to control the decisions of the

5    RSA, including the ability to control the RSA legal defense trust, contrary to the interests of the

6    membership in favor of LDME.  Defendant Dammeier proposed that LDA should agree to be the

7    purported fair and impartial legal administrator for the RSA trust but to steer all of the legal defense

8    work to LDME alone.

9        54.    In June 2012, apparently in response to attempts by LDME and the Individual

10   Defendants to control the RSA legal defense trust as claimed by Dammeier, the Riverside Sheriff's

11   Association, Legal Defense Trust, banned LDME and its individual attorneys from working for the

12   panel for a period of 3 years, finding in part that LDME and its attorneys, engaged in improper

13   activities.  A true and correct copy of the RSA's June 2012 resolution is attached hereto.

14       55.    Defendant Ethir admitted to Fishman that she and LDME intend to use, and continue

15   using, the attorney-client privilege to shield LDME and its attorneys and to prevent disclosure of

16   evidence of their wrongful conduct, including the use of a private investigator and "female

17   operative" to attempt to get a sitting member of the Costa Mesa City Council in a compromising

18   position at a time that LDME was negotiating an agreement on behalf of the Costa Mesa Police

19   Association with the City of Costa Mesa.

20       56.    When LDF confronted LDME about its excessive and fraudulent billings, LDME

21   threatened to use against LDF and some of the individual Trustees its purchased influence with

22   certain Member Associations.  In some cases, as with Brian Smith and the RPOA, LDME's

23   purchase has come through and those Associations have taken steps to do the bidding of LDME,

24   even though LDME, as described below, is prohibited from directly engaging in such conduct.

25   **LDME's Post-Removal Use of Its "Playbook" Against Its Own Former Client**

26       57.    In 2012, LDME's use of a primer then available on its website, entitled

27   "Negotiations After Impasse," was well publicized.  *See, e.g.,* http://www.abajournal.com/news/

28   article/law_firms_playbook_shows_how_police_play_hardball_at_bargaining_table;

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**                                        Page 17

Complaint - federal FINAL

1   http://www.ocregister.com/taxdollars/strong-478876-public-police.html.  The primer outlined

2   certain tactics to use when collective bargaining negotiations between police associations and the

3   municipalities they serve break down.  The tactics included adopting a public message that distracts

4   the public from the issues actually being negotiated, *i.e.* pay, medical coverage and pension plans,

5   and instead focus on "public safety," such as billboards that read "crime is up and the City could

6   care less about your safety," making the City appear as if it cares only about costs; storming the city

7   council and "publicly chastising them"; "actively campaigning" against any member of the

8   governing body up for election; starting referendums to remove those in decision making positions;

9   focusing on a single individual, such as a city manager or mayor and pursuing them until loyalty is

10  assured before moving on to the next "victim"; and starting a website to cast your opponent in a bad

11  light (such as "GardenGroveSucks.com," a "big hit," according to Dammeier).

12      58.     After the story was published, LDME took the primer down.  It is clear, however,

13  that the tactics set forth therein are still very much a part of its playbook, as they are the exact

14  tactics LDME is now employing against LDF and certain individual Trustees in an effort to strong

15  arm its way back onto the LDF panel.  As ethically questionable as such tactics may otherwise be in

16  other relationships, using such tactics against a former client with respect to the circumstances

17  under which an attorney's services were terminated and relating to the subject matter of the

18  attorney's prior representation, is a violation of the attorneys' ethical and legal duties.

19      59.     Here, among other things, after the billing anomalies were raised and continuing

20  after LDME was removed as panel counsel for LDF, Defendants have, among other things,

21  threatened baseless litigation against Trustees Kerry Condon and Fred Rowbotham; started a

22  purported "watchdog" website promoting the litigation they are instigating against LDF; and

23  attempted (unsuccessfully) to manipulate the election of Trustee Kerry Condon as President of the

24  Anaheim Police Association, a position he presently holds, by backing candidates sympathetic to

25  LDME, and in an attempt to remove Condon and other Trustees from their positions with LDF, all

26  to manipulate those in decision-making power to accede to LDME's demands.

27      60.     Further, subsequent to the termination of LDME as panel counsel, the Defendants

28  have engaged in a campaign to attempt to influence LDF participants to leave LDF and join other

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 18

legal defense program providers.  This campaign has included divulging alleged attorney-client privileged communications between LDF and LDME and taking actions directly adverse to LDF with respect to the subject matter of LDME's prior representation of LDF.  Just as advised in the playbook, LDME has adopted a public message attempting to distract from the real issue (LDME's desire to line its own pockets with LDF's funds) by falsely claiming that the Trustees have informed LDME that they are concerned only with the costs of representation and do not want LDF attorneys to zealously represent LDF participants.

61.     Following the disclosure of the discovery of overbilling, Defendants further began threatening to personally attack and remove LDF board members if they take any action based upon the overbilling and claiming to have the power to control Member Association actions to remove board members who act against LDME.

62.     Plaintiff is further informed and believes that the Defendants have further encouraged police association participants in LDF to sue LDF (its former client) for, among other things, over-paying LDME as a result of LDME's fraudulent billing practices and removing LDME from the LDF panel.  Such conduct violates the Defendants' duty of confidentiality (Bus. & Prof. Code § 6068(e) and Rules of Professional Conduct 3-100) and their ongoing duty of loyalty to their former client and person to whom they owed a fiduciary duty, LDF.  Defendants Dammeier and Horton have each filed or threatened to file baseless lawsuits against LDF and/or individual Trustees on behalf of certain of their loyal followers, all in an effort to intimidate and pressure LDF to accede to Defendants' demands to be admitted back on the LDF panel.

**LDME's Unauthorized Practice of Law**

63.     On or about September 25, 2013, LDF learned that LDME was not registered as a professional corporation with the State Bar as required by Corporations Code § 13404 and Business & Professions Code § 6160, et seq.  LDME never informed LDF that LDME was not registered, and had not been registered for the entire time that LDME was representing itself to LDF and members of the public and the employee associations which it represented as a corporation lawfully engaged in the practice of law.  Accordingly, every letter, phone call, wire transfer, bill, pleading, and other action using the corporate identity as a law corporation is a separate act of mail, or wire

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 19

1  fraud and if not entitled to charge fees, then all of the fees were improperly obtained from LDF in

2  violation of 18 U.S.C. § 664 (theft or conversion of ERISA funds).

3      64.    Plaintiff is informed and believes and thereon alleges that LDME was thus engaged

4  in the unauthorized practice of law and was not a properly formed corporation such that it should be

5  deemed a de facto general partnership and its partners should be held individually liable for the acts

6  of the purported corporation.

7      65.    Each of the Individual Defendants directly engaged in fraudulent billing practices

8  and/or knew and promoted those practices by the other Individual Defendants, and/or are

9  responsible as partners and as members of the enterprise for the actions and conduct of LDME and

10  of one another.

11      66.    LDF is further informed and believes and thereon alleges that LDME and the

12  Individual Defendants intentionally managed LDME, including the supervision of their partners,

13  attorneys and/or employees, encouraging, requiring, and rewarding them for submitting bills

14  seeking unconscionable, excessive, unreasonable and fraudulent fees and engaging in abusive and

15  fraudulent billing practices.

16      67.    In all, LDF has paid to LDME in excess of $19 million in attorney's fees since 2006,

17  all of which should be disgorged as a result of the claims alleged herein.

18      **FIRST CLAIM FOR RELIEF**

19      ***(Engaging in Prohibited Transaction Forbidden by ERISA § 406(a),***

20      ***29 U.S.C. § 1106(a) Against All Defendants)***

21      68.    Plaintiff incorporates herein as if fully stated paragraphs 1 through 67, inclusive,

22  above.

23      69.    LDF is an employee welfare benefit plan within the meaning of ERISA § 3(1) (29

24  U.S.C. § 1002(1)), in that it is established or maintained by an employee organization for the

25  purpose of providing for its participants prepaid legal services.

26      70.    LDME was at all relevant times a party in interest to LDF within the meaning of

27  ERISA § 3(14)(B) (29 U.S.C. § 1002(14)(B)), in that it and its attorneys provided services to the

28  plan.

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 20

71.     ERISA §§ 406(a) and 408(b) (29 U.S.C. §§ 1106(a) and 1108(b)) prohibit transactions in which a party in interest to an ERISA plan receives more than reasonable compensation for services to the plan.  LDF knew that LDME was such a party in interest, but did not know at the time it made payments to LDME that LDME had submitted fraudulent or excessive billings or was receiving more than reasonable compensation for the service provided.

72.     Defendants engaged in prohibited transactions in violation of these provisions when they received payments of amounts overbilled and in excess of reasonable compensation for the services provided.

73.     ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)), permits a plan fiduciary (the LDF Board of Trustees here) to bring a lawsuit to enforce the provisions of Title I of ERISA (Title 29, Chapter 18, Subchapter I of the United States Code), which includes 29 U.S.C. §§ 1106 and 1108.

74.     Defendants have profited in an amount to be proven at trial from the prohibited transactions by receiving more than reasonable compensation for the services rendered.

75.     LDME is a transferee of assets of LDF that were more than reasonable compensation for the services it rendered to LDF.  Upon learning of the excessive fees paid to LDME, Plaintiff acted promptly to prevent further overbilling by removing LDME from the panel and to recover for the Plan the excess amounts paid.

76.     Accordingly, LDF is entitled to disgorgement, constructive trust, and other appropriate equitable relief from Defendants and its attorney's fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)) incurred in pursuing its claims against LDME.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

### *(For Violation of Racketeering Influenced and Corruption Organization Act (RICO)*

### *[18 U.S.C. § 1961 et seq.] Against All Defendants)*

77.     Plaintiff incorporates herein by reference as if fully stated paragraphs 1 through 67, 69 through 76, above.

78.     Plaintiff and Defendants are each "persons," as that term is defined in 18 U.S.C. § 1961(3).

79.     At all relevant times, in violation of 18 U.S.C. § 1962(c), Defendants engaged and/or participated, directly and/or indirectly, in the affairs of an association-in-fact enterprise identified herein, the affairs of which affected interstate commerce through a pattern of racketeering activity.

80.     Defendants, by and through their own conduct and participation and/or through their associations in fact, engaged and/or participated in, directly or indirectly, a pattern of racketeering activity as defined in 18 U.S.C. § 1961(1).  Such racketeering activity includes, but is not limited to, violation on at least two occasions of 18 U.S.C. §§ 664 (theft or conversion from employee benefit plan), 1341 (mail fraud), and 1343 (wire fraud), beginning in 2006 through the present by, among other things, using the mails, telephone, facsimile, and/or other devices to convert LDF trust assets through fraudulent, excessive and unconscionable overbillings

81.     Defendants' association in fact with one another in the continued conduct of their business constitutes an "Enterprise" within the meaning of RICO.

82.     Plaintiff is informed and believes and thereon alleges that Defendants, as described herein, devised and/or intended to devise a scheme or artifice to defraud and/or injure as alleged herein through the use of the United States mails and wires in interstate and foreign commerce and otherwise used fraudulent and deceptive means as herein alleged to obtain the property and/or money of Plaintiff.

83.     In furtherance of the common scheme, LDME, the other Defendants, and the employees of LDME routinely falsely billed for work not performed, often resulting in over 24 hours of work allegedly performed by a single attorney in a day, these billings included regularly billing travel as if it had occurred from the LDME office in Upland resulting in exaggerated travel time, and admitted double and triple billing simultaneously.  Among the fraudulent bills sent via mail and/or wire, and paid via mail and/or wire, in furtherance of the Enterprise, are the following instances:

> i.     For work allegedly performed by Kasey Sirody on July 2, 2013, LDME billed 6 hours for travel when the actual time spent was approximately 4 hours or less, and triple billed for mileage, which was 69 miles round trip, but billed a total of 207 miles, 138 of which did not occur;

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**                    Page 22

(a)     The fraudulent billings for Kasey Sirody on July 2, 2013, were billed over multiple invoices, which were sent via wire by LDME to Legal Defense Administrators, Inc., servers on or about July 5, 2013, including invoices dated July 5, 2013, Nos. 64026, 64058, and 64059.

(b)     The invoices dated July 2, 2013, Nos. 64026, 64058, and 64059 were paid via wire transfer on or about August 12, 2013, wire transfer no. 12973.

ii.     For work allegedly performed by Peter Horton on or about November 14, 2012, LDME billed 11.2 hours for travel when the actual time spent was approximately 5.0 hours, and submitted reimbursement requests for 473 miles driven when the actual miles were approximately 269;

(a)     The fraudulent billings for Peter Horton on November 14, 2012, were spread out over multiple invoices, which were sent via wire by LDME to Legal Defense Administrators, Inc. servers, on or about December 7, 2012, including invoices dated December 7, 2012, Nos. 61195, 61218, and 61257.

(b)     The invoices dated December 7, 2012, Nos. 61195, 61218, and 61257 were paid on or about December 31, 2012, wire transfer no. 11830.

iii.    For work allegedly performed by Saku Ethir on or about April 11, 2012, LDME billed 27.0 hours, including 7.7 hours of travel, work not actually performed, double and triple billing, 8.5 hours of hearings/interrogations, 2.8 hours of plan and prepare, and 4 hours of in person meetings with clients;

(a)     The fraudulent billings for Saku Ethir on April 11, 2012, were spread over multiple invoices, which were sent via wire by LDME to Legal Defense Administrators, inc. servers, on or about May 4, 2012, including invoices dated May 4, 2012, Nos. 58354, 58355, 58376, 58377, 58380, 58386, 58476, 58498, 58535, 58560, 58589, 58612.

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 23

(b)     The invoices dated May 4, 2012, including, Nos. 58354, 58377, 58380,58386, 58589, 58612, were paid on or about, May 21, 2012, wire transfer no. 10672;  No.  58355 was paid on or about August 30, 2012, wire transfer no. 11181; Nos.  58376, 58560 were paid on or about May 30, 2012, wire transfer no. 10747; Nos.  58498, 58535, were paid on or about May 30, 2012, wire transfer no. 10710; Nos. 58476 and58581 were paid on or about, May 14, 2012, wire transfer no. 10628.

84.     Defendant LDME billed for hours allegedly worked by Saku Ethir while suspended from the practice of law from July 2-4, 2012. Practicing law while suspended by the State Bar is the unauthorized practice of law in violation of Bus. & Prof. Code § 6125.

(a)     The fraudulent billings for Saku Ethir for July 2, 3, and 4, 2012 were spread over multiple invoices, which were sent via wire by LDME to Legal Defense Administrators, Inc., servers, on or about July, 3, 2012; August 3, 2012; and September 7, 2012, which included invoice numbers 59696, 59735, 59755, 59813, 59830, 59834, 59968, 59696A, 59429, 59713, 59821.

(b)     The invoices dated July, 3, 2012, August 3, 2012, and September 7, 2012, including No. 59429 was paid on or about July 23, 2012, wire transfer number 10963; Nos. 59696, 59813, 59968, 59821 were paid on or about August 30, 2012, wire transfer number 11181; Nos. 59735, 59755, 59830, 59834, 59713 were paid on about September 28, 2012, wire transfer number 11306; and No. 59696A was paid on or about October 31, 2012, wire transfer number 11491.

85.     Plaintiff is informed and believes that each of the members of the Enterprise was involved in the continuing coordination of activities between the Individual Defendants and the Enterprise.  As to each Defendant, there was a common communication network by which information concerning the Enterprise was exchanged on a regular basis.  Typically this communication occurred by the use of electronic mail, text message, or the telephone in which

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**                                                    Page 24

Complaint - federal FINAL

Defendants planned and coordinated the operation of the Enterprise alleged herein and ran its continuing operation.

86.     Defendants' illegal conduct and wrongful practices were carried out by an array of employees, as well as by consultants and investigators and co-conspirators, who necessarily relied upon frequent transfers of documents and information and funds by the U.S. mails and interstate wire facilities.

87.     Each invoice sent and paid that contains double or triple-billed time, travel time billed for trips never taken or in excess of the time actually travelled, or time billed to LDF that was not actually spent by the attorney billing the time forms the basis of the theft of ERISA funds from LDF and is an act of wire and mail fraud.  Alleging each of the precise dates each of the fraudulent invoices was sent and paid would be unreasonably burdensome and to some extent not possible without conducting discovery.  Many of the precise dates of Defendants' uses of the U.S. mails and interstate wire facilities (and corresponding RICO predicate acts of violation of 18 U.S.C. Section 1341 (mail fraud) and violations of 18 U.S.C. Section 1343 (wire fraud) and violations of 18 U.S.C. Section 664 (theft or conversion of ERISA funds) have been hidden and cannot be alleged without access to the LDME and Individual Defendants' books and records.  Indeed, an essential part of the successful operation of the Enterprise alleged herein depended upon secrecy, and in hiding behind the attorney-client privilege as alleged above, and Defendants took deliberate steps to conceal their wrongdoing and to pressure and influence those operating outside of the Enterprise to not reveal information learned or revealed to them by unlawful means.  Plaintiff has, however, described herein more than two occasions on which the RICO predicate acts of mail fraud, wire fraud, and theft from an ERISA fund and how those acts were in furtherance of the Enterprise.

88.     Under the provisions of 18 U.S.C. § 1964(c)**,** Defendants are jointly and severally liable to Plaintiff for three times the damages that Plaintiff has sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

89.     As a proximate result of Defendants' racketeering activities as described herein, Plaintiff suffered injury to its business and property in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 25

## THIRD CLAIM FOR RELIEF

### (For Conspiracy to Violate RICO Against All Defendants Against All Defendants)

90.     Plaintiff incorporates herein by reference as if fully stated paragraphs 1 through 67, 69 through 76, and 78 through 89, inclusive, set forth above.

91.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, conspired and agreed among themselves to violate 18 U.S.C. § 1962 as set forth in the Second Claim for Relief above.

92.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, further agreed to violate said statute for the purpose of destroying and/or diminishing Plaintiff's business and financial interests and to otherwise injure Plaintiff.

93.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, did the acts alleged herein pursuant to, and in furtherance of, the conspiracy and above-alleged agreement.

94.     Plaintiff is informed and believes and thereon alleges that each of Defendants furthered the conspiracy by cooperation with, and/or lent aid and encouragement to, and/or ratified and adopted the acts alleged herein of, each of the other Defendants.  Each of the Defendants is therefore liable for all the acts, omissions, and/or breaches of the others, all of which were done in furtherance of the conspiracy and for the benefit of any or all of the co-conspirators.

95.     Plaintiff is informed and believes and thereon alleges that Defendants continue through the present to commit overt acts in furtherance of the above-described conspiracy.  As a proximate result of this conspiracy and agreement, Plaintiff has been damaged, and continues to be damaged, in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (By Plaintiffs Against All Defendants for Legal Malpractice)

96.     Plaintiffs reallege and incorporate herein by reference each of the allegations of paragraphs 1 through 67, inclusive, of this Complaint.

97.     To the extent – and only to the extent – that this claim for relief is based on

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**

Complaint - federal FINAL

Page 26

collection and attempts to collect unreasonable compensation, it is pled in the alternative to the First Claim for Relief.  To the extent based on conduct other than charging an unreasonable fee, this claim for relief is in addition, and not in the alternative, to the First Claim for Relief.

98.     Plaintiff and Defendants had an attorney-client relationship based on the tripartite relationship among Defendants, LDF and LDF Plan Participants.

99.     As Plaintiff's attorneys, Defendants owed Plaintiff a duty of care, including the obligations of diligence, competence, loyalty, confidentiality, full and fair disclosure, utmost candor and the duty to use and possess such knowledge, ordinary care and skill as is commonly used and possessed by other attorneys in the community under like circumstances.

100.    At all times herein mentioned, Defendants and each of them, negligently and carelessly acted, or omitted to act, in connection with the foregoing matters, including but not limited to the following:

i.      Charging Plaintiff excessive, unreasonable and unconscionable fees;

ii.     Failing to efficiently manage the provision of legal services and contain fees or costs, resulting in exorbitant and unnecessary fees and costs;

iii.    Rendering services that were duplicative, unnecessary and unwarranted, and charging Plaintiff for the fees allegedly incurred;

iv.     Failing to comply with the Rules of Professional Conduct, in particular Cal. R. Prof. Cond. 1-120, 1-300 and 4-200;

v.      Charging Plaintiff for legal services rendered by suspended attorneys and engaging in the unauthorized practice of law; and

vi.     Failing to submit bills only for services rendered and in conformance with policies established by LDA and LDF's Trustees.

101.    The conduct alleged herein by Defendants fell below the standard of care.

102.    As a proximate result of the wrongful conduct of the Defendants herein alleged, Plaintiff has been damaged in an amount according to proof, including but not limited to in incurring and paying exorbitant and unconscionable fees far in excess of the value of the services rendered.  Plaintiff is informed and believes and thereon alleges that the excessive fees generated

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**

Page 27

Complaint - federal FINAL

by Defendants due to the wrongful conduct alleged herein total over $1,000,000.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

**FIFTH CAUSE OF ACTION**

***(For Breach of Fiduciary Duty Against All Defendants)***

103.    Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 67, inclusive, of this Complaint.

104.    To the extent – and only to the extent – that this claim for relief is based on collection and attempts to collect unreasonable compensation, it is pled in the alternative to the First Claim for Relief.  To the extent based on conduct other than charging an unreasonable fee, this claim for relief is in addition, and not in the alternative, to the First Claim for Relief.

105.    As attorneys and fiduciaries, Defendants owed fiduciary duties to Plaintiff of undivided service, loyalty, integrity, full and fair disclosure, candor and utmost good faith. Included among such duties were obligations imposed upon said Defendants as fiduciaries to avoid putting themselves in a position where their own interests conflicted with those of their clients, including not charging excessive and unwarranted fees, to avoid conflicts of interest, and to make full and complete disclosure of all pertinent facts known to said Defendants, including the existence of errors or inaccuracies in the bills which resulted in excessive or unwarranted fees.  Defendants further had an ongoing duty of loyalty not to do any acts or disclose any alleged confidences injurious Plaintiff or LDF Participants with respect to the subject matter of their prior representation.

106.    At all times mentioned herein, Plaintiff reposed trust and confidence in Defendants as their attorneys.  Defendants recognized and understood that Plaintiff placed great trust and confidence in them, and that Plaintiff depended upon them to maintain certain confidences, trusts, loyalty and independent judgment on behalf of Plaintiff, unimpaired by said Defendants' own personal interests or the interests of others not shared in common with Plaintiff.

107.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, willfully and intentionally breached their fiduciary duties to Plaintiff, including, but not limited to, by:

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 28

i.   Charging Plaintiff excessive, unreasonable and unconscionable fees;

ii.  Rendering services that were duplicative, unnecessary and unwarranted, and charging Plaintiff for the fees allegedly incurred;

iii. Concealing from the Plaintiff material facts such as billing errors and improprieties, the suspension of Saku Ethir and the unauthorized practice of law by LDME;

iv.  Failing to comply with the Rules of Professional Conduct, in particular Cal. R. Prof. Cond. 1-120, 1-300 and 4-200;

v.   Failing to refund to LDF the amount that they acknowledged were paid or charged as the result of billing errors and failing to refund to LDF the amounts paid for services rendered while Ethir was suspended from the practice of law;

vi.  Violating Business and Professions Code § 6068(e) and Rules of Professional Conduct 3-100 by revealing and using confidential information of the Trustees and LDF Participants against them after LDME was removed as panel counsel.  Such conduct is ongoing;

vii. Violating their ongoing duties to Plaintiff and violating Business and Professions Code §§ 6068(d) (attorneys may employ those means "only as are consistent with the truth") and 6106 (an act involving dishonesty is grounds for attorney suspension or disbarment) by, among other things, falsely stating that the Trustees made statements suggesting that the Trustees are concerned only with the cost of representation of LDF Participants, not the quality of representation, that one or more of the Trustees stated that cops in need of LDME's services "don't deserve to be cops" or words to such effect, and that the Trustees have jeopardized LDF's membership by removing LDME as panel counsel.  Such conduct is ongoing;

viii. Violating Rules of Professional Conduct 1-400 in communications directed to potential clients, and further violating Business and Professions Code

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 29

§§ 6068(d) (attorneys may employ those means "only as are consistent with the truth") and 6106 (an act involving dishonesty is grounds for attorney suspension or disbarment), by repeatedly falsely claiming to LDF's membership that LDME and attorney Ethir were the "most winningest [sic]" LDF Attorneys in California and the LDF attorneys with the "best track record in California," without any factual or legal basis to make such claims and without even access to the comparative data upon which such a statement could truthfully be based. Such conduct is ongoing;

ix. After being terminated as panel counsel, engaging in communications and conduct, including the dissemination of false information concerning Plaintiff's financial condition, designed to induce LDF's participants to stop their participation in LDF. Such conduct is ongoing;

x. Engaging in conduct injurious to their former client, LDF, with respect to the subject matter of LDME's prior representation of Plaintiff, including without limitation encouraging others to sue LDF for alleged claims arising out of Defendants' over and fraudulent billings and/or the removal of LDME as panel counsel. Such conduct is ongoing; and

xi. Attempting to collect illegal and unconscionable fees by, among other things, attempting to collect, and threatening to sue LDF Participants to collect, allegedly past due fees that LDME cannot collect because it was not authorized to practice law at the time the fees were allegedly incurred. Accordingly, the fees are illegal and cannot be collected, notwithstanding LDME's continued efforts to collect said fees.

108. The conduct of the said Defendants herein alleged was in breach of the Defendants' fiduciary duties of full and fair disclosure, confidence, loyalty, candor and diligence, and therefore constitutes a breach of said fiduciary duties.

109. In doing the acts herein alleged, Defendants intentionally and willfully favored their own interests over the Plaintiff, with full knowledge that such action would cause economic loss

SALL
SPENCER
CALLAS &
KRUEGER

COMPLAINT

Page 30

Complaint - federal FINAL

1  and injury to the Plaintiff, including but not limited to the payment of unreasonable, unconscionable

2  and excessive fees and the payment of legal fees to defend the third party lawsuits prompted by

3  Defendants.

4  110.   As a proximate result of the wrongful conduct of the Defendants herein alleged,

5  Plaintiff has suffered general, special and consequential damages in an amount subject to proof but

6  believed to be in excess of $1,000,000.

7  111.   This conduct of Defendants was done fraudulently and with a conscious disregard

8  for Plaintiff's rights and constitutes despicable conduct, and was done with the intent to vex, injure,

9  or annoy Plaintiff such as to constitute oppression, fraud, or malice under California Civil Code

10  § 3294, entitling Plaintiff to punitive damages in an amount appropriate to punish or make an

11  example of Defendants.

12  112.   As a result of Defendants' breach of fiduciary duty as herein alleged, LDF is faced

13  with pending and/or threatened lawsuits that relate to or arise from or are the result of the conduct

14  of Defendants.  All legal fees and costs LDF incurs in defense of said lawsuits are recoverable from

15  Defendants under, among other legal principles (including indemnification and/or contribution), the

16  "tort of another" doctrine.

17  WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

18  ## SIXTH CAUSE OF ACTION

19  ### *(Actual Fraud Against All Defendants)*

20  113.   Plaintiff realleges and incorporates herein by reference each of the allegations of

21  paragraphs 1 through 67 of this Complaint.

22  114.   To the extent – and only to the extent – that this claim for relief is based on

23  collection and attempts to collect unreasonable compensation, it is pled in the alternative to the First

24  Claim for Relief.  To the extent based on conduct other than charging an unreasonable fee, this

25  claim for relief is in addition, and not in the alternative, to the First Claim for Relief.

26  115.   Based upon the fiduciary relationship between Plaintiff and Defendants, Defendants

27  had a duty of full and fair disclosure to Plaintiff.

28  116.   As alleged herein, each of the Defendants failed to disclose material facts to

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**                                                    Page 31

Plaintiff.  Some of the material non-disclosures include:

    i.   Intentionally suppressing the fact that Defendants were submitting invoices to LDF for excessive, unconscionable and unreasonable fees;

    ii.   Intentionally suppressing the fact that Defendants were billing LDF for services not performed for LDF members;

    iii.   Intentionally suppressing the fact that Defendants were billing LDF for travel not taken on LDF matters;

    iv.   Intentionally suppressing the fact that Defendants were double and triple billing without LDF's consent on LDF member matters;

    v.   Intentionally suppressing the fact that Defendants were padding the bills by adding time onto the bills in excess of the time attorneys had recorded in LDME's time slips program;

    vi.   Intentionally suppressing the fact that LDME attorneys were billing in excess of 24 hours of legal services in a single day; and

    vii.   Intentionally suppressing the suspension of Saku Ethir from the practice of law and that LDME was engaged in the unauthorized practice of law.

117.    These facts were concealed by Defendants intentionally with the intent to defraud Plaintiff, cover-up their misconduct and overbilling, to serve their own financial interest in continuing to collect excessive and unwarranted fees for services in excess of the value of services performed, and to undermine Plaintiff's ability to protect its own interests.

118.    Until no sooner than June of 2013, Plaintiff was not aware of the facts concealed.

119.    Plaintiff reasonably relied on the omissions to its detriment.  Had the true facts been disclosed to Plaintiff concerning the overbilling, Plaintiff would have immediately terminated Defendants as panel attorneys and not paid the invoices as submitted.

120.    As a proximate result of the wrongful conduct of the Defendants herein alleged, Plaintiff has suffered general and special damages in an amount subject to proof, but believed to be in excess of $1,000,000.

121.    This conduct of each of the Individual Defendants was done fraudulently and with a

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**

Page 32

Complaint - federal FINAL

1  conscious disregard for Plaintiff's rights and constitutes despicable conduct, and was done with the

2  intent to vex, injure, or annoy Plaintiff such as to constitute oppression, fraud, or malice under

3  California Civil Code § 3294, entitling Plaintiff to punitive damages in an amount appropriate to

4  punish or make an example of Defendants.

5       122.   LDME's conduct described herein was undertaken by its officers or managing

6  agents – the Individual Defendants except Sirody – who were responsible for LDME's general

7  management and operations.  The conduct was therefore undertaken on behalf of LDME with fraud

8  and in conscious disregard for Plaintiff's rights.  LDME had advance knowledge of the actions and

9  conduct of its employees, partners, agents, and managing agents, whose conduct was encouraged,

10  ordered, ratified, authorized, and approved by each of the Individual Defendants.

11       WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

12  **SEVENTH CAUSE OF ACTION**

13  ***(For Negligent Supervision Against All Defendants Except Sirody)***

14       123.   Plaintiff realleges and incorporates herein by reference the allegations of paragraphs

15  1 through 67, inclusive, of this Complaint.

16       124.   To the extent – and only to the extent – that this claim for relief is based on

17  collection and attempts to collect unreasonable compensation, it is pled in the alternative to the First

18  Claim for Relief.  To the extent based on conduct other than charging an unreasonable fee, this

19  claim for relief is in addition, and not in the alternative, to the First Claim for Relief.

20       125.   Defendants LDME, Dammeier, Ethir, Horton and McGill had a duty to supervise

21  attorneys and other employees in their provision of services to LDF participants and in preparation

22  of their billings to LDF.  Said Defendants also owed a fiduciary duty to LDF of undivided service,

23  loyalty, integrity, full and fair disclosure, candor and utmost good faith.

24       126.   Plaintiff is informed and believes and thereon alleges that said Defendants failed to

25  adequately supervise LDME attorneys and supervisors to ensure that the bills sent to LDF were

26  accurate and included only reasonable and customary fees for services actually performed.

27       127.    Defendants knew, or in the exercise of reasonable care for Plaintiff's financial

28  interests should have known, that LDME attorneys submitted excessive, unreasonable, duplicative

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL

**COMPLAINT**

Page 33

1    or inaccurate bills to LDF and engaged in fraudulent billing practices – such as double and triple

2    billing for legal services and charging for travel that did not actually occur.

3        128.    As a direct, proximate and legal result of this negligent supervision, Plaintiff was

4    damaged by, among other things, over-paying LDME for services that were not performed or

5    improperly billed.

6        WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

7                              **EIGHTH CAUSE OF ACTION**

8                    ***(For Unjust Enrichment Against All Defendants Except Sirody)***

9        129.    Plaintiff realleges and incorporates herein by reference the allegations of paragraphs

10   1 through 67, inclusive, of this Complaint.

11       130.    To the extent – and only to the extent – that this claim for relief is based on

12   collection and attempts to collect unreasonable compensation, it is pled in the alternative to the First

13   Claim for Relief.  To the extent based on conduct other than charging an unreasonable fee, this

14   claim for relief is in addition, and not in the alternative, to the First Claim for Relief.

15       131.    Defendants will by unjustly enriched if allowed to retain the fees paid by Plaintiff

16   based on excessive, inaccurate or duplicative bills and incurred while LDME was not authorized to

17   practice law.

18       132.    Due to Defendants' unjust enrichment at Plaintiff's expense, Plaintiff has been

19   damaged in an amount according to proof, but believed to be in excess of $1,000,000.

20       WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

21                              **NINTH CLAIM FOR RELIEF**

22           ***(For Unfair Business Practices, Violation of Bus. & Prof. Code § 17200***

23                                ***Against All Defendants***)

24       133.    Plaintiff realleges and incorporates herein by reference the allegations of paragraphs

25   1 through 67, 69 through 76, and 78 through 89, inclusive, of this Complaint.

26       134.    Beginning at a date currently unknown but at least four years prior to the filing of

27   the herein action, all Defendants at one time or another have committed, and on information and

28   belief continue to commit, certain business acts and practices that actually harmed the Plaintiff and

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**                                                 Page 34

Complaint - federal FINAL

LDF members, and those in the general public similarly situated.  Since such business acts and practices are unlawful, unfair and fraudulent, they violate the Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, et seq., and are actionable by Plaintiff for injunctive relief and restitution.  Those actionable business acts and practices are already alleged with factual particularity hereinabove in paragraphs 33 through 67, 69 through 76, 78 through 89, 100, 106 and 116, and those allegations are incorporated by reference as though set forth fully at this point.  The hereinabove-alleged allegations of business acts and practices become actionable under the UCL in conjunction with the following additional allegations:

    i.  Such business acts and practices are "unlawful" in that they violate, inter alia without limitation, Cal. R. Prof. Cond. 1-120, 1-300, 1-400, 3-100, 4-200, Corp. Code § 13404, Bus. & Prof. Code §§ 6068(d), (e), 6106, 6126 and 6160; 18 U.S.C. § 664, 29 U.S.C. § 1106(a) and 18 U.S.C. § 1962(c).

    ii.  Such business acts and practices are "unfair" in that the harm to Plaintiff outweighs their utility, if any, to the Defendants or to society.

135.    The foregoing unlawful, unfair and fraudulent business acts and practices by the Defendants present a continuing threat to the Plaintiff and those in the general public similarly situated, in that Defendants will continue to collect illegal, excessive and unconscionable fees and continue to breach their duties of confidentiality and loyalty to Plaintiff.  Under Bus. & Prof.  Code § 17203, therefore, the Court should enter a preliminary injunction order and a permanent injunction judgment enjoining the Defendants from engaging in their unlawful, unfair and fraudulent business acts and practices.  Such injunctive relief is the only way to prevent great harm and irreparable injury to Plaintiff and those in the general public similarly situated.

136.    As a direct and proximate consequence of the foregoing unlawful, unfair and fraudulent business acts and practices by Defendants, Plaintiff suffered injury in fact by losing money to the Defendants who took them as profits or unjust enrichments.  Under Bus. & Prof. Code § 17203 and pursuant to the Court's equitable powers, therefore, the Court should order disgorged from the Defendants and restored to the Plaintiff  all such profits and unjust enrichments that the Defendants continue to hold, in an amount to be established by the evidence.

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**

Complaint - federal FINAL

Page 35

137.   In the interests of justice, Plaintiff should be awarded attorneys' fees under CCP § 1021.5 for having borne the private burden to prosecute this action to enforce important rights under the UCL affecting public interests and conferring a significant benefit to the general public.

WHEREFORE, Plaintiff prays for judgment as follows:

### PRAYER FOR RELIEF

### ON THE FIRST CLAIM FOR RELIEF

1.   A declaration that the Defendants and each of them engaged in prohibited transactions in violation of ERISA § 406(a) (29 U.S.C. § 1106(a)) by receiving compensation in excess of a reasonable fee for the services performed;

2.   Order Defendants, and each of them, make good to the LDF Plan the losses resulting from their prohibited transactions;

3.   Order that Defendant Fiduciaries provide other appropriate equitable relief to the LDF Plan, including but not limited to, disgorging all excessive payments received, imposing a constructive trust and/or equitable lien on any funds wrongfully held or transferred by any of the Defendants, including the assets into which such funds may be traced;

4.   Order Defendants to pay prejudgment interest;

5.   Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)) and/or for the benefit obtained for the common fund; and

6.   Award such other and further relief as the Court deems equitable and just.

### ON THE SECOND AND THIRD CAUSES OF ACTION

1.   For general, special and consequential damages according to proof, including without limitation, disgorgement of all legal fees paid to LDME;

2.   For treble damages as provided in 18 U.S.C. § 1964 (c);

3.   For interest on those amounts at the legal rate as allowed by law;

4.   For costs of suit and attorney's fees as provided in 18 U.S.C. § 1964(c);

SALL
SPENCER
CALLAS &
KRUEGER

**COMPLAINT**

Page 36

Complaint - federal FINAL

**ON THE FOURTH, SEVENTH AND EIGHTH CAUSES OF ACTION**

1.      For general, special and consequential damages according to proof, including without limitation, disgorgement of all legal fees paid to LDME;

2.      For interest thereon, and prejudgment interest, at the legal rate;

**ON THE FIFTH AND SIXTH CAUSES OF ACTION**

1.      For general, special and consequential damages according to proof, including without limitation, disgorgement of all legal fees paid to LDME;

2.      For interest thereon, and prejudgment interest, at the legal rate

3.      For punitive and exemplary damages in amount according to proof;

**ON THE NINTH CLAIM FOR RELIEF**

1.      For general, special and consequential damages according to proof;

2.      For restitutionary and injunctive relief, enjoining Defendants from engaging in the conduct herein alleged, and disgorgement pursuant to California Bus. & Prof. Code § 17203;

**ON ALL CLAIMS FOR RELIEF**

1.      For reasonable attorney's fees and costs herein incurred as permitted by law;

2.      For interest, and prejudgment interest, at the legal rate on all sums owed;

3.      For such other and further relief as the Court deemed proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all matters and issues triable by jury.

DATED:  April 5, 2014                         THE SALL LAW FIRM
                                              A Professional Corporation


                                                    /s/ Suzanne Burke Spencer
                                              By: _____
                                                       Suzanne Burke Spencer

                                              Attorneys for Plaintiff BOARD OF TRUSTEES of the
                                              LEGAL DEFENSE FUND of PORAC

SALL
SPENCER
CALLAS &
KRUEGER

Complaint - federal FINAL